Good morning, Your Honor. Deanna Dotson, Representative Appellant to Mr. Faafiti. Thank you. And it caught us by surprise a little bit. We thought we were further down on the calendar. I'm sorry. Well, you were until three cases suddenly settled on us. Oh, okay. It happens on appeal just like it does in the trial court. Thank you. I'd like to reserve at least a minute for rebuttal. Thank you. On this case, there's a really difficult argument because it's misconduct against the government. And it's troubling in the fact that a prime government witness who was the confidential informant, the one that conducted all the buys with the defendants, several of the defendants, testifies using notes written by the DEA government agent who was also present at the trial and also testified. But how is that any different from prepping a witness before trial by allowing them to read the DEA case reports in which a summary is made of the interview that they gave the agent or giving them a copy of their grand jury testimony? The record here suggests that we have an illiterate witness who may have a difficult time remembering dates. And whatever it was he was using to refresh his recollection is disclosed to the defense so they can cross-examine. And where's the prejudice here? Well, I think the prejudice is that he's not that illiterate. He's been involved in these drug buys. He was able to go through the sequence of what happened. But what's troubling is not just the dates on these notes but how much, the amount, the amount of money, who was present, where it happened. I mean, my surmise from the record is that he did remember all of that. And as to that, the notes simply reflect what he said. What he didn't remember was the dates. He said that. He said, I didn't know the dates. And he asked the, so the DA agent supplied the dates. That seems fairly apparent. And to that degree he wasn't testifying from his own recollection. To the degree he's testifying from his own recollection, the fact that he's using notes to do it doesn't matter. Isn't that what the case law says? Well, I don't believe so, Your Honor. If you want to use your own notes that you write down. That's not what the case law says. The case law says it's okay to use notes that other people wrote about what you recollected. A government agent writing down notes for you to testify? Yes. You could use anything to refresh a witness's recollection. The one thing that, frankly, it appeared to me that was not done was the government counsel did a very good job of laying the foundation for refreshing the recollection of the witness. The witness was never asked, having now reviewed those notes, do you remember the date on which it occurred? But it looks to me that the jury knew what it was that the witness was using to testify from. Not until after. Where's the prejudice? Well, not until after the fact, Your Honor. Before the jury rendered its ruling, it had to make a credibility determination, right? And your argument here is that this witness was not credible because he was really testifying from the notes. But the question we have to look at is the prejudice. And if all that came out at the trial, how was your client harmed? Well, he didn't have to remember the date, Your Honor, because the government asked specifically. Now, what happened on February 20th, 2002? Every time one of these buys came up, the government gave the date and asked. In fact, the questions were so leading. But there was no objection to the form of the question. Yes, Your Honor, but I think you have to realize that the defendant was representing himself. He had no attorney, and at times there were objections, and the court, the judge did admonish, you know, watch your leading questions. But granted, there were no objections on this. But he was led through this. He was led by plain error then, correct? I mean, the fact that he's pro se is his choice, and he doesn't get any special break from the rules of evidence. That's correct, Your Honor. However, having a government agent write something down when this person doesn't independently remember these, and he couldn't remember other things. For instance, when he was asked, well, what date were you arrested? I don't remember. I mean, he couldn't remember, so I have trouble. That's all before the jury. They heard all that in the testimony of both this witness and the DEA agent as to his difficulty remembering dates. That's a credibility determination. How is your client prejudiced? You essentially want us to declare as a matter of law that this was impermissible and must be plain error because it's so prejudicial that it amounts to a violation of due process, right? Yes, Your Honor. And what's your best case to support that argument? Because I can't find one. Along that lines, probably not, but a government representative for the sovereign should be impartial and should not lead a witness, should not provide notes for them to testify to based on not their own recollection of the facts, but these notes. And what case says that? What's your side's case? Berger v. U.S. Which one? Berger v. U.S. Oh, okay. The prosecutor is a representative of the sovereign. Sovereign, correct. And should... So kind of a general principle that the prosecutor has an obligation to ensure fairness. Correct. And I don't believe that this particular action was fair, Your Honor. But even aside from this, another argument Mr. Fahafidi has put forth is the insufficiency of the evidence. The only evidence against him was the one by that was testified to by this government agent, confidential agent, and the circumstances around that, there was no evidence really to show that Mr. Fahafidi had entered into an agreement with this conspiracy. Now, he gave statements at the time of his arrest which indicated pretty clearly that he was involved in all of this, it seemed to me. No. All of that, you're just saying that that didn't relate to an agreement? No, he didn't. He admitted in his statement that he purchased cocaine from people that were not involved in this particular conspiracy and for his own use. In fact, he still owed money on it. If it was part of the conspiracy, why didn't the members of the conspiracy, the head members, pay for that? That was on his own. He did not admit to being a part of this. What he admitted to is that, well, sometimes I would drive things down or pick things up. But that doesn't mean that he was agreeing to participate in this conspiracy. I thought there has to be an agreement and then he has to assist the conspiracy, but does he have to literally agree? No, but I think he has to know about it and give some sort of evidence that he is a part of this. Why isn't he delivering things and picking things up for a known conspiracy arrest? Because he's not a part of it. He's just like on the sidelines and his mom or his aunt would say, oh, will you run down and do this errand for me? Will you go down and pick this up? Even the other co-defendants that testified didn't say I didn't see him buy anything, I didn't see him sell anything. One time I saw him pick up something or one time I saw him bringing money. In other words, he wasn't involved like all the members of this conspiracy were. He was not actively doing things. He was just there. He was there living in his mother's home. Wait a minute. Delivering drugs and picking up money is not actively furthering the object of the conspiracy? He only did it occasionally when he was asked to do it. Once is enough. And, in fact, in a drug conspiracy you don't even have to prove an overt act if the evidence otherwise shows a conspiracy. But was it an innocent act where he was just there and his mom said run down there and do it for me? The just there cases are cases where the guy is literally in the room but doesn't do anything. Here he's just there because he just delivered the drugs. And that is a different fact from the just present case. Sometimes he was just in the room. One time drugs were delivered to the house and the witness testified he was just sitting off watching TV, wasn't involved. He wasn't someone that was actively involved through the record and through the testimony. He was just there. He was just doing things that he was asked because his mother or aunt asked him to do. The evidence just isn't enough to show that he was an active participant and that he even was part of this. He was just a family member essentially there and available to do things when somebody else wasn't there to do it. I'd like to reserve my time. Thank you. Good morning, Your Honors. May it please the Court. I'm Assistant United States Attorney Loretta Sheehan on behalf of the government. I'd like to begin with the prosecutorial misconduct argument. The defendant in this case has failed to establish any error at all in Peya Manu's use of notes, let alone plain error, let alone prosecutorial misconduct. Let me ask you the one thing that troubles me. My understanding is that the defendant is not a criminal. My understanding is that notes are okay. Notes are okay even if they're somebody else's notes as long as you're testifying, as long as the witness is testifying from his own recollection. Correct. Right? But we know here that as to the dates he was testifying as to his own recollection. He said that. He said that he knew what took place, he knew the exchange, but he can't remember exactly the date. So I asked Mr. Stickles yesterday if he could just write down the date of the first purchase we made to the last date. In other words, he asked Stickles to write down the dates, not from his recollection, but from Stickles' records as I understand it. So why isn't that a problem, that he isn't testifying as to the date at least from his own recollection? It was from his own recollection, Your Honor. This is essentially an adopted statement by Mr. Peya Manu. The testimony at trial of Special Agent Stickles was that the night before Peya Manu's testimony, they sat down and they went over Peya Manu's previous statements, Peya Manu's previous statements, not DEA sixes or sevens, not statements of DEA agents, but they went over his previous debriefings. I mean, what would happen, the testimony was that what would happen is they'd have a buy, he'd come out, he'd give the drugs and any leftover money to the agents, they'd go back to the DEA office and there'd be a debriefing, and Mr. Peya Manu would make a statement. And those were recorded. And that's what was gone over the night before. And in fact, so Agent Stickles testified that what they reviewed were Mr. Peya Manu's own recollections. At that time, he didn't really exactly recall exact dates from eight buys that he made two years previously. But the dates that were recorded and that were adopted by Peya Manu were from his own recollections made immediately after each buy. So it wasn't from the recollections of another guy. Exactly. I don't know if it matters. He'd forgotten that by the time of trial. He recalled it at one time, certainly, when he gave the dates to the investigator. But then at the time of trial, he should be testifying from his own recollection. He was as to the transactions because he knew what he'd done and he testified about all that stuff. But he didn't know about the dates. Now, we were told by Ms. Dodson that the government supplied the dates by the questions that it asked the witness in a leading manner, probably, to which there was no objection and said, on this date, did you do this? And the witness says, yes, what I did or explained what he did on that day. And there's no objection. Is that OK? Is that sufficient? There were occasions when the government, as a foundational matter, would say, OK, let's direct your attention to the 1st of February 20. And so, in essence, yeah, that was leading and that probably shouldn't have happened. The dates were established independently, Your Honor. The dates were established through Special Agent Stickel's testimony because what would happen was, a payment would come out and provide him, he'd get money, he'd go into the bar, he'd buy the drugs, he'd come out and he'd give Special Agent Stickel. Essentially saying it was harmless, as to the dates. Yes, Your Honor. Yes, essentially. Because Special Agent Stickel's in the supplemental excerpts of records from pages 136 through 151, he was the one who actually provided the dates for the jury. He was the one who actually said, 1st buy was on February 20. 2nd buy was on February 26. 3rd buy is on March 13. And then we had another buy. So that, the dates of the buys actually was established through Special Agent Stickel's before Payamonu ever got on the stand. And the government established that independently. So, yes, there were some foundational questions. There was some, you know, there was some. The evidence was already before the jury. It actually was before the jury, Your Honor, because you have to establish a chain of custody for all your drugs. So we established it through the case agent. We put him up there and he was the one who established the dates in terms of what happened inside the bar, who sold the drugs, you know, who was present, what kind of chatter went back and forth. That was all by Payamonu. And as the court has acknowledged, I mean, that was a jury, that was a credibility call for the jury. I mean, these are, the record is, is that Payamonu, since he had practically no writing skills, actually, this is his own recollection, and he just simply said, look, can you write, as they're reviewing, he's like, can you write this down? And the important part of all of this is that the government didn't hide a thing. As soon as, in fact, there wasn't any objection, and as soon as Payamonu started reaching for notes, it was not, in fact, as has been argued today, it was not, in fact, the court who said, what's going on here? What do you got there? You got notes? It was the government who said, whoa, whoa, slow down. What do you have there? You have notes? It's okay. Bring them out. I agree that a better foundation could have been laid in terms of like, okay, now that you've reviewed your notes, that should have been asked. Now that you've reviewed notes, is your memory refreshed? And then Judge Zilley said, well, let's see what you're looking at, right? And the defense already had these notes. They were at counsel table, and there were standby counsels sitting there. I mean, they had received those notes before and noticed that he was going to probably use those notes to refresh his memory before Mr. Monu ever got on the stand. So once he pulls up the notes, the government actually said, what do you got there? What are you looking at? What are you referring to? They had noticed. They knew. There was no surprises. There was nothing sneaky going on here. The other thing that sort of mystifies me here is why it's being couched as prosecutorial misconduct. If it was anything, it was just an evidentiary problem. Correct. I agree. There's been no case law cited. There's been nothing to support the allegation of prosecutorial misconduct. And so I'm not sure why it was couched in that fashion. It is perfectly acceptable to use notes, even the notes of another, to refresh your memory. This is, at the end of the day, essentially a Jenks issue. If you adopt a statement, that has to be handed over to the defense. It was. It was handed over to the defense. We told them what was going on. We gave them copies of it. There is no evidence in the record, contrary to argument today, that Mr. Monu was not illiterate. The only evidence that was provided by Special Agent Stickles is that this man can barely read and write. With regard to the sufficiency of the evidence argument, I'll move on to that unless the court has further questions. We agree with the court that the defendant's confession to the existence of a conspiracy and its knowing participation in it was quite extensive. There was extensive testimony of co-conspirators who dealt with him, particularly Fabian Verrissi, who was his cocaine supplier. He testified extensively as to the cocaine that he supplied the defendant and how, once he became a supplier, it was the defendant who, in fact, introduced Mr. Verrissi to his aunt, to the defendant's aunt, Harriet Yamaguchi, and to his mother, Olita Asiata. So he was an essential link, in fact, in hooking up his supplier as a trusted source to his aunt and mother, who were the leaders of the conspiracy. In particular, the wiretap evidence was devastating against Mr. Fafiti. I would direct the court, particularly to the supplemental excerpts of record at pages 957 through 966, where you have the defendant's own voice saying, well, maybe we can get some action tonight. You know, you got any stuff? You know, are you going to bring it down? Well, make sure you bring the stuff to Mom so she doesn't do anything stupid with it. I mean, this is evidence from the defendant's own mouth. Yeah, you know, the government knows what they're talking about. Those conversations are always kind of difficult for a judge to understand. What in the world are they saying? But you understand the lingo. You understand. Well, that's not the point. There's only one reason to talk in that cryptic manner. There's only one reason to make things so mysterious, and that's because you're breaking the law. The lottery had to decide that it wasn't fruit that they were talking about. It wasn't Taro's, right. It wasn't fruit. It wasn't Taro's. It was usually either fruit, car parts, or... Sometimes it's, well, sometimes it's windows, things you can see through. Windows. I think in the 80s it was probably snow. It was snowing in Miami. I only know that through movies. So I think there was tremendous evidence. And the last issue that was raised in the brief, of course, was it was ironic. It was the reasonableness of his sentence. He got the lowest... I mean, this is a guy who's looking at level 34, and he got the mandatory minimum, which is an extremely generous sentence, obviously carefully considered by Judge Zille. What he was carefully considering was whether he should be higher than that. Right, because he gave him the lowest possible sentence. And there is, in the record, a clear consideration of the 3553A factors. I do want to point out that the reply brief has mischaracterized the record in a couple of troubling ways. There's no evidence in the record of any personal use by Mr. Fafiti. There's no evidence at all that Mr. Fafiti ever used drugs. So for the argument to be made that he collected cocaine, pounds of cocaine for his personal use, that's simply not supported by the record. Nor is there any citation to testimony or evidence that money was sent to him by his aunt for his birthday. That argument was made in the reply brief. And again, there's no citation to the record, and there's no support in the record. There's no evidence of when his birthday is or birthday gifts. I only have nine seconds, so if there's any questions, Your Honor, I will sit down. Thank you very much. Thank you. It is true, is it not, that the sentence was the mandatory minimum, and that's the end of that? Yes, correct. But, Your Honor, all the other co-defendants were also subject to that mandatory minimum, and they were all part of this conspiracy. But they weren't charged with a crime. They weren't convicted of the crime that had the mandatory minimum. Yes, they pled guilty to it, Your Honor. And then what? And they signed plea agreements, and they had significantly lower sentences. They got a 5K1 departure, right, which the law permits if you cooperate. That's why we encourage people to cooperate. You get a better deal. Right. You get a better deal. And your client didn't do that. Well, but he's then, is he being punished for going to trial because he doesn't think he's guilty? No, he's getting the mandatory minimum because that's what Congress has declared, and he didn't cooperate, so he doesn't get the departure down under 5K1. Okay, Your Honor. I would like to point out that the notes were provided the night before this testimony, and it didn't say on here these notes were prepared by somebody else. So just if you received these notes, you wouldn't know that these were not written by the defendant who was testifying. What's your response to McKeon's argument that the agent had already testified these were contemporaneous surveilled drug purchases, and he'd already laid out this course of the investigation, the dates on which all this stuff occurred? The only thing the agent laid out, Your Honor, were the dates, and he was testifying to the exhibits of the drug amounts. It did not – Am I not being clear in my question? I guess I'm not. The jury had before it from an independent witness the agent, the dates on which this all occurred. Then the witness you're complaining about gets on the stand. The prosecutor asks objectionable leading questions to which there is no objection, incorporating the dates that had already been established through the DEA agent's testimony. What harm does your client suffer from using the agent's notes to talk about the dates? It's not about the dates, Your Honor, because the dates were given, the dates were testified to. What's objectionable is what else. So there's no prejudice there. It's only leading questions. It's not the dates that are important. So that's just an evidentiary issue. But other than the dates, he said, I recollected, he did, although not specifically asked about whether it was from his own recollection, he said it was. No, he didn't, Your Honor, because the court asked him. He said, when did you get these notes? Yesterday when I met with. And he said, do you have independent knowledge or remember these dates and what happened? And he said, no, not exact, not the dates. I can't really remember. That's right, no, not the dates. But I do remember the dates. But he can't remember anything. He says that's the only thing I ask him. He can just, and he goes on, I asked him yesterday just to write down the dates of the first purchase and last. And the court says he's done more than that, has he? He's written down all these dates. And he's also refreshing his memory of the events that happened, the amount of drugs, who was present. But doesn't the rule permit that? That's the whole purpose of refreshing the recollection of a witness. The only question that Ms. Sheehan should have asked, which she didn't, was, having now reviewed those notes, does that refresh your recollection, to which hopefully your witness will answer yes. Then go ahead and testify. Your Honor, I don't believe from the record that these notes that he testified to were from his independent recollection. But maybe we're just going round and round. If the agent had already established the notes and the quantities, which obviously came in through the agent and through the lab, and the jury knew from hearing what it was that he was relying on, where is the prejudicial error? The agent only testified to the date of the buy and the amount of the drugs. And he said, P.M. Manu said, I could remember what take place, you know, the exchange. But he couldn't remember exactly the date. So he asked Stickles if he could just write down the date of the first purchases we made to the last date. So isn't he saying that he did remember the incident, he just didn't remember the date? If he couldn't remember the date, Your Honor, then why didn't he just write down buy number one on this date, buy number two on this date? Instead, he wrote specifics, the number of grams, the amount of money, where it was, who was present. Even on the very first one, that there was a cop in there on the side that he went out to get soup. There were too many details in here that if he had independent recollection, he wouldn't have needed these notes. The date would have been sufficient. He didn't even need the date as it came out by the questioning. But if that was all he needed was the date, and I believe the judge even mentioned that, well, you got more than the dates. You got all the information that he testified to. So what you're really arguing is that the court should simply have struck his testimony. Correct, Your Honor. Okay. And I take offense to what's in my reply brief. It was substantiated. In the pre-sentence report, it goes into depth what some of that information was. And on these, the telephone calls. That's not in the record of the case. Pardon? The pre-sentence report is not in the record of the case for purposes of the conviction. No, but the information is used as background information, for instance, that he was. . . For sentencing, but not for the conviction. Not for the conviction, but it was used for background information as far as his drug use and abuse through childhood and so forth, Your Honor. In the wiretaps, there was nothing in the wiretaps specifically for this defendant, Mr. Fafiti, that showed that he was. . . Thank you very much for your arguments. We thank counsel. The case of United States v. Fafiti is submitted.
judges: Thompson, Berzon, Tallman